In re Edward J. KUPINSKY, Debtor.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Edward J. KUPINSKY, Defendant.**

**Bankruptcy No. 90–30467.**
**Adv. No. 90–0188.**

United States Bankruptcy Court, S.D. Illinois.

Nov. 19, 1991.

Stephen R. Clark, Clark and Sturgeon, Belleville, Ill., for defendant/debtor Edward J. Kupinsky.

Laura K. Grandy, Mathia, Marifian & Richter, Ltd., Belleville, Ill., Co-counsel on behalf of debtor, Edward J. Kupinsky.

John L. Bitzer, Dunham, Boman & Leskera, Collinsville, Ill., for plaintiff, State Farm Mut. Auto. Ins. Co.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge, Sitting by Designation.

This adversary proceeding comes before the Court on the complaint of State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to 11 U.S.C. § 523(a)(6) and (a)(9) for a determination of the dischargeability of a certain debt owed it by the Debtor, Edward J. Kupinsky ("Debtor"). For the reasons set forth below, the Court having considered all the pleadings and evidence adduced at trial by way of testimony and exhibits, does hereby find that State Farm has proven its cause of action under section 523(a)(9), but not under section 523(a)(6).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334, and Rule 34A of the Rules of the United States District Court for the Southern District of Illinois. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

The Debtor filed a Chapter 7 petition on June 5, 1990. State Farm holds a claim against the Debtor which was reduced to judgment by default on April 4, 1987, by the Circuit Court for the 20th Judicial Circuit, St. Clair County, Illinois. The judgment was for $50,000.00 in actual damages and $50,000.00 in punitive damages, arising out of a vehicular accident which occurred on Main Street in Belleville, Illinois on July 16, 1985. The Debtor was the driver of a motor vehicle which collided with another motor vehicle, thereby injuring a passenger insured by State Farm. State Farm filed the state court action and included an allegation that the Debtor was operating the motor vehicle while under the influence of intoxicating liquor, in violation of Ill.Rev. Stat. ch. 95½, para. 11–501 (1987).

The order rendering judgment in favor of State Farm indicated that judgment was entered by default for the Debtor's failure to appear at trial. The order further indicated that the circuit court heard evidence in assessing the damages awarded. The order specifically finds "the defendant acted in a willful manner in that he drove his car at a high rate of speed, while intoxicated ... and said acts were performed in a manner that defendant knew, or should have known, that his acts were likely to cause death or great bodily injury."

The instant adversary proceeding filed on August 17, 1990, seeks a determination of dischargeability of the foregoing debt. The substantive allegations of the complaint were denied by the Debtor. Chief Bankruptcy Judge Kenneth J. Meyers denied State Farm's motion for summary judgment on the grounds that the issue of the Debtor's driving under the influence of intoxicating liquor was not shown to have been actually litigated in the prior state court action for purposes of the doctrine of collateral estoppel. In a memorandum opinion, Judge Meyers specifically noted that it was unclear from the record before him whether the state court was presented cogent proof of the Debtor's inebriation at the time of the accident. On May 9, 1991, during oral arguments on the motion for

summary judgment, counsel for State Farm indicated that it was not pursuing the punitive damage component of the claim. Thereafter, the case was assigned for trial to the undersigned Bankruptcy Judge sitting by designation, and was tried on October 2, 1991.

## III. EVIDENCE ADDUCED AT TRIAL

Officer Edward Gutreuter ("Gutreuter") of the Belleville Police Department testified that he arrived at the scene of the accident a few minutes after the occurrence. He and other officers investigating the accident, among other things, measured the skid marks of the Debtor's vehicle to determine its estimated speed at the time of impact. Based on the length of the skid marks he measured, Gutreuter calculated that the Debtor's vehicle was travelling at least 66 miles per hour at the time and place of collision, which was located at an area subject to a 35 mile per hour speed limit. The driver of the other vehicle died as result of the accident and State Farm's insured was injured. Gutreuter also saw the Debtor in the hospital and interviewed him for approximately ten minutes. He observed the Debtor's eyes to be glassy, heard the Debtor berate various hospital employees, and smelled alcohol on his breath. Gutreuter testified that the Debtor admitted to him that he had consumed six to seven beers prior to the accident. In Gutreuter's opinion, the Debtor was still intoxicated at the time of his interview.

The Debtor was the only other witness who testified. He had been driving West on Main Street, and the driver of the other vehicle, which had been proceeding East bound, turned to cross the Debtor's lane of traffic prior to impact. He admitted that he had been drinking and told the investigating officers that he consumed six to seven beers that night prior to the occurrence. The Debtor sustained injuries from the accident, including a broken rib, fractured skull and a bolt implanted in his shin. As a result of those injuries, he did not recall the specifics of the accident, just that the other driver turned in front of his vehicle. The Debtor admitted he was criminally charged with reckless homicide to

which he pled guilty and served the sentence imposed. The Debtor stipulated that his blood alcohol test resulted in a level of 0.10%. In the Debtor's opinion, the accident would not have occurred if the other vehicle had not turned in front of his automobile.

## IV. DISCUSSION

### A. *Dischargeability Standards*

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). The discharge provisions of section 523 are construed strictly against the creditor and liberally in favor of the Debtor. *In re Pochel,* 64 B.R. 82, 84 (Bankr.C.D.Ill.1986). The standard of proof pursuant to section 523 is by the preponderance of the evidence. *Grogan v. Garner,* — U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Whitson v. Middleton,* 898 F.2d 950, 952 (4th Cir.1990); *In re Carney,* 68 B.R. 655, 657 (Bankr. D.N.H.1986).

### B. *11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), or 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

Although alleged as a ground for a finding of nondischargeability, section 523(a)(6) was not argued at trial. This section will be discussed, however, as it was asserted in the complaint.

In order for a debt to be held nondischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *In re Kimzey,* 761 F.2d 421, 425 (7th Cir.1985); *United Bank of Southgate v. Nelson,* 35 B.R. 766, 768 (N.D.Ill.1983); *In re Hopkins,* 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "will-

ful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987). A debtor need not act with ill will or malevolent purpose toward the injured party. *In re Hallahan,* 78 B.R. 547, 550 (Bankr. C.D.Ill.1987). Thus, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." 3 *Collier on Bankruptcy* ¶ 523.16 at 523–129 (15th ed. 1991).

■ Before the addition of section 523(a)(9) to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, bankruptcy courts struggled with the determination of dischargeability of liabilities resulting from drunken driving. Several courts utilized dicta from *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) finding that the "reckless disregard" standard involved in negligent conduct translated into willful and malicious conduct. In the legislative history to the Bankruptcy Code, however, Congress made it clear that the application of the lesser culpable conduct of "reckless disregard" to willful and malicious conduct is overruled. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 78 (1978); U.S.Code Cong. & Admin.News 5787 (1978). Thus, many courts have taken the view that drunken driving for purposes of section 523(a)(6), even though reckless, is not necessarily willful or malicious absent a showing that the debtor specifically intended to injure anyone. *In re Ankowiak,* 9 B.R. 746 (Bankr.N.D.Ill.1981); *In re Bryson,* 3 B.R. 593 (Bankr.N.D.Ill.1980). Courts in other circuits take the view that drunken driving is inherently willful and malicious because the driver intentionally becomes drunk and then drives. These courts favor steps to reduce and penalize drunken driving in accord with public policy. *See e.g., In re Wooten,* 30 B.R. 357, 358 (Bankr.N.D.Ala.1983). The Court finds the *Bryson* approach more preferable to the presumption of willfulness and malice implied by *Wooten.* Accordingly, the

Court holds that there must be a showing of the requisite intent to establish both willfulness and malice pursuant to section 523(a)(6).

In the case at bar, aside from the Debtor's testimony, the only evidence offered was that of a non-occurrence witness. The post-occurrence admissions Gutreuter obtained from the Debtor fail to establish the Debtor's state of mind prior to or at the time of the accident. Rather, same focus on his condition of intoxication both at the time of the occurrence and subsequently at the hospital. Although reference to a written statement obtained by Gutreuter and signed by the Debtor was made at trial, same was not furnished the Court nor offered into evidence. According to the Debtor's testimony, he could not remember any of the details of the accident. More significantly, there was no evidence elicited regarding his actions immediately prior to the collision or when, where, why, how, or with whom he consumed the alcohol. Consequently, the Court will not infer or speculate about the Debtor's state of mind when there was no evidence adduced at trial with respect to same.

This result is not inconsistent with the state court order which found the Debtor's acts to be willful because there was no finding of malice contained therein. No testimony was presented showing that the Debtor either deliberately intoxicated himself or intentionally drove his vehicle while intoxicated. Although the testimony viewed as a whole meets the *Condict* definition of malicious, the Court will not infer that the willful requirement has been shown. State Farm has not met this element of proof by a preponderance of the foregoing evidence.

Such problems of proof and differing judicial interpretations of the appropriate application of section 523(a)(6) to personal injuries and property damages resulting from alleged drunken driving, led to the addition of section 523(a)(9) to the Bankruptcy Code in 1984.

### C.  *11 U.S.C. § 523(a)(9)*

As originally enacted, section 523(a)(9) provided as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred.

11 U.S.C. § 523(a)(9).

Section 523(a)(9) was amended for cases filed after November 15, 1990 to read as follows:

(9) for death or personal injury caused by the debtor's operation of motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

The former version of the statute controls here. The Debtor's bankruptcy petition was filed on June 5, 1990; the instant adversary proceeding was filed August 17, 1990; and the answer thereto was filed November 9, 1990, all before the effective date of the amended version of section 523(a)(9).

One noted authority has commented that the original version of section 523(a)(9) is so narrowly drawn as to exacerbate the problems sought to be addressed by the section. This is because the underlying debt giving rise to the claim must result from a debtor's operation of a motor vehicle within the United States while legally intoxicated by alcohol. 1 R. Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 11.-06[i] at 943 (2d ed. 1990) (collecting cases). According to Judge Ginsberg, the creditor's claim for which a dischargeability determination is sought can be for either personal injury or property damages. The question of whether a debtor was intoxicated, however, is to be resolved with reference to non-bankruptcy law by applying the law of

the state where the accident occurred. *Whitson v. Middleton,* 898 F.2d 950, 952 (4th Cir.1990); *In re Lewis,* 77 B.R. 972 (S.D.Fla.1987).

Section 523(a)(9) contemplates two essential elements of proof for a finding of nondischargeability: (1) that the underlying debt arose from a judgment or consent decree entered in a court of record as a result of the Debtor's operation of a motor vehicle; and (2) that the Debtor operated the motor vehicle while legally intoxicated under the laws of the state in which the motor vehicle was operated. *In re Pahule,* 849 F.2d 1056 (7th Cir.1988). *Pahule* noted the public policy concerns behind state laws against drunken driving. The court stated that the bankruptcy courts should conduct an independent inquiry into the underlying facts of a debtor's liability under the state court judgment. *Id.* at 1058. The court also observed that section 523(a)(9) was designed to prevent debtors from using the bankruptcy laws to extinguish debts incurred as a result of drunken driving. *Id.*

■ State Farm argues that both elements have been proven by a preponderance of the evidence and the only issue to be decided is whether the Debtor was intoxicated. State Farm concludes that it is not necessary for the Court to make a determination that the Debtor's intoxication was the proximate cause of the accident. It argues that the admitted 0.10% blood alcohol level of the Debtor establishes a presumption of legal intoxication under Ill.Rev.Stat. ch. 95½, para. 11–501 (1987). The Illinois statute mirrors similar statutes in other jurisdictions. *See e.g., In re Gomez,* 70 B.R. 96 (Bankr.S.D.Fla.1987) (section 523(a)(9) dischargeability determination in favor of creditor where debtor had blood alcohol content of 0.12% shortly after accident and was presumptively intoxicated under applicable Virginia law). In light of the Debtor's admissions and Gutreuter's testimony, the Court concludes that the Debtor was driving under the influence of intoxicating liquor at the time of accident, and such fact gave rise to and was the basis upon which the civil judg-

ment was entered in the state court proceedings in favor of State Farm.

In his post-trial memorandum, the Debtor concedes the second issue of intoxication and his operation of the motor vehicle in such condition, but challenges the proof required under the first element. The Debtor's principal argument is that the evidence failed to establish that his intoxication was the proximate cause of the accident and the resulting civil judgment entered against him. Moreover, the Debtor contends that the driver of the other vehicle was contributorily negligent by crossing his lane of traffic where he had the right-of-way. Furthermore, the Debtor argues the default judgment entered against him in the state court proceeding does not serve to collaterally estop the relitigation of the first element of proof. Thus, the Debtor concludes that State Farm was required to establish at trial the additional element that the accident was proximately caused as a result of the Debtor's operation of a motor vehicle, rather than the contributory negligence of the other driver.

The Court rejects this line of argument. Section 523(a)(9) requires only a showing of "judgment ... entered ... against the debtor wherein *liability* was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated...." (emphasis added). The focus of section 523(a)(9)'s first element relates to the debt arising from a judgment or consent decree imposing such liability on the Debtor. It makes no mention of any additional requirement that the underlying cause of action giving rise to the judgment or decree be entered on a showing that the Debtor's intoxication was the principal or sole proximate cause of injury. *See In re Keating*, 80 B.R. 115 (Bankr.E.D.Wis.1987); *but see In re Christiansen*, 80 B.R. 481, 484 n. 3 (D.C.Mo.1987).

Furthermore, even if the Debtor's argument for an additional proximate cause requirement is correct, under Illinois law, intoxication need not be the only proximate cause, but only "a" proximate cause. Pursuant to Illinois law, proximate cause means any cause which, in natural or prob-

able sequence, produced the injury complained of. *See Illinois Pattern Jury Instructions* (Civil) Instruction. No. 15.01 (3rd ed. 1989). It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury. *Id.* The official comments and notes on use of the jury instruction contains discussion of numerous Illinois case authorities noting that the above definition of proximate cause is properly given as a jury instruction in motor vehicle accident cases involving only one plaintiff and one defendant. Thus, even analyzed from the Debtor's argument, the Court readily finds that the Debtor's driving of his motor vehicle while intoxicated was "a" proximate cause of the accident which resulted in injuries to State Farm's insured giving rise to the state court's judgment in its favor.

Moreover, such "lack of proximate cause defense" has been rejected by other bankruptcy courts in similar cases. *See In re Hodak*, 119 B.R. 516, 520 (Bankr.W.D.Pa. 1990). In that case, a judgment creditor's claim was on a debt arising from a state court judgment entered as a result of the debtor's operation of a motor vehicle while legally intoxicated. Judge Markovitz held the debt nondischargeable despite the debtor's contention that the collision was not caused by his intoxicated condition. The evidence indicated that the debtor had been drinking alcohol some hours prior to the accident. Testimony was presented to show that the debtor smelled of alcohol after the accident. As noted in *Hodak*, nothing in the text of section 523(a)(9) nor in its legislative history suggests that proximate cause is a necessary element. *See also In re Gomez*, 70 B.R. 96 (Bankr. S.D.Fla.1987); *In re Tuzzolino*, 70 B.R. 373 (Bankr.N.D.N.Y.1987).

The Court does agree with the Debtor's contention that the evidence presented at trial controls the ultimate disposition of this matter. The Court has made an independent evaluation of all the evidence on the dischargeability issues notwithstanding the prior state court finding. The Court, however, rejects the Debtor's further argument that the relief sought by State Farm

is barred because the driver of the other vehicle may have been contributorily negligent and failed to yield the right-of-way to the Debtor, but turned in front of his speeding vehicle. The Court further declines to accept the Debtor's assertion that Ill.Rev.Stat. ch. 110, para. 2–1116 applies to bar State Farm's bankruptcy relief even if the other driver's contributory negligence or fault was more than fifty percent of the proximate cause of the accident.

Lastly, the Debtor contends that State Farm has failed to prove that the driver of the other vehicle was less than fifty percent of the proximate cause of the accident, and therefore, the damages sought here should be comparatively reduced. The Court overrules such arguments because they mix inapposite Illinois tort law of contributory negligence with bankruptcy dischargeability determination. The latter, not the former, controls. The question of dischargeability in bankruptcy is a matter of federal, not state law. *In re Midnet*, 84 B.R. 776 (Bankr.M.D.Fla.1988); *In re Phillips*, 80 B.R. 484 (Bankr.W.D.Mo.1987). Any contributory negligence of the driver of the other vehicle, even if a party to this action, would not serve to establish a defense under section 523(a)(9).

### V. CONCLUSION

The evidence is uncontroverted that the underlying debt arises from a judgment entered in favor of State Farm by a court of record against the Debtor in which liability was incurred as a result of the Debtor's operation of a motor vehicle while legally intoxicated under Illinois law. All required elements under section 523(a)(9) have been proven. Thus, the debt arising from the state court judgment is nondischargeable thereunder. The relief sought, however, under section 523(a)(6) is hereby denied.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.